1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

THE BOARD OF TRUSTEES, in their
capacities as Trustees of the CEMENT
MASONS HEALTH AND WELFARE
TRUST FUND FOR NORTHERN
CALIFORNIA, CEMENT MASONS
PENSION TRUST FUND FOR
NORTHERN CALIFORNIA, CEMENT
MASONS APPRENTICESHIP AND
TRAINING TRUST FUND FOR
NORTHERN CALIFORNIA,

        Plaintiffs,

  v.

RBS WASHINGTON BLVD, LLC, a
California Limited Liability Company,

        Defendant.

_____/

No. C 09-00660 WHA

**ORDER GRANTING
PLAINTIFFS' MOTION FOR
DEFAULT JUDGMENT**

**INTRODUCTION**

      In this action under the Employee Retirement Income Security Act, plaintiffs The Board

of Trustees (in their capacities as trustees) of the Cement Masons Health and Welfare Trust Fund

for Northern California, Cement Masons Pension Trust Fund for Northern California, Cement

Masons Vacation/Holiday Trust Fund for Northern California and Cement Masons

Apprenticeship and Training Trust Fund for Northern California, (hereinafter "plaintiff trust

funds") move for default judgment against defendant RBS Washington Blvd, LLC.  For the

following reasons, the motion is **GRANTED**.

**STATEMENT**

The facts alleged by plaintiffs are as follows. Plaintiffs The Board of Trustees are trustees of the trust fund plaintiffs. Trust fund plaintiffs are, *inter alia*, a multi-employer employee benefit plan within the meaning of 29 U.S.C. 1132.

On October 9, 2006, defendant RBS (the employer) executed a written collective bargaining agreement with the District Council of Plasterers and Cement Masons of Northern California (the union). This agreement incorporates the terms of several other agreements and requires signatory employers to do the following:

1.     Make timely contributions into plaintiff trust funds at a specified rate per hour worked by, or paid to, all employees performing work covered by the agreement;

2.     Report the number of covered hours worked by, or paid to, each employee covered by the agreement and the amounts owed for that work; and

3.     Allow an audit of their books and records to allow plaintiff trust funds to determine whether the employer is making full and prompt payment of the required contributions.

In accordance with this agreement, defendant submitted to an audit for the period of January to December 2006. This audit showed that defendant owed $13,662.27 in unpaid contributions. Due to this delinquency, plaintiff trust funds assessed $7,555.51 in liquidated damages and interest, pursuant to the agreement. Plaintiff trust funds have been unable to conduct an audit of defendant's books and records thereafter, including for the years of 2007, 2008, and 2009. The agreement also provides for the recovery of attorney's fees and costs in an action to recover contributions and enforce the terms of the agreement. Plaintiff trust funds estimate that they have accrued $10,318.75 in attorney's fees and $795.75 in costs.

Plaintiffs served the complaint on defendant via substituted service on March 2, 2009. Proof of service was filed on July 24, 2009. The first amended complaint was filed and served on May 5, 2009. Defendant has failed to answer. At the request of plaintiffs, the clerk entered default against defendant on October 26, 2009.

Plaintiffs now move for default judgment against defendant (Dkt. No. 25) and request a

judgment granting plaintiffs the following relief:

>    1.    $13,662.27 in unpaid contributions;

>    2.    $7,555.51 in liquidated damages and interest;

>    3.    $10,318.75 in attorney's fees;

>    4.    $795.75 in costs;

>    5.    An injunction compelling defendant to submit to an audit by

auditors selected by plaintiff trust funds covering the time period from January 1,

2007, to the present date, at defendant's residence or the location where the

records are kept, at a reasonable time or times during business hours, and to allow

such auditors to examine and copy defendant's records, papers, and/or reports

relevant to enforcement of the agreement, including but not limited to:

>> Individual earning records (compensation); W–2 forms; 1096 and 1099 forms; reporting forms for all Trust Funds; State DE–3 tax reports; workers compensation insurance report; employee time cards; payroll journal; quarterly payroll tax returns (form 941); check register and supporting cash voucher; Former 1120– 1040 or partnership tax returns; general ledger — (portion relating to payroll audit);

>    6.    An order compelling an accounting to be had between plaintiffs and

defendant; and

>    7.    Upon completion of the accounting, judgment entered by the Court

that may be amended by plaintiffs to incorporate the outstanding sums ascertained

from the audit to be due from defendant, as well as liquidated damages and interest

on said sums.

## ANALYSIS

Under FRCP 55(b)(2), a party can apply to the court for entry of judgment by default.

"The district court's decision whether to enter a default judgment is a discretionary one."

*Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In determining whether default judgment

is appropriate, the following factors are considered:

>> (1) [T]he possibility of prejudice to plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint,

(4) the sum of money at stake in the action, (5) the possibility of a
dispute concerning the material facts, (6) whether the default was
due to excusable neglect, and (7) the strong policy underlying the
Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). For the following reasons, these

factors favor granting default judgment.

### A. Merits of Substantive Claims and Sufficiency of the Complaint.

After the entry of default, all well-pleaded factual allegations in the complaint are taken as

true, except as to the amount of damages. *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906

(9th Cir. 2002). The merits of plaintiffs' substantive claims and the sufficiency of the complaint

are thus considered together.

29 U.S.C. 1145 states:

Every employer who is obligated to make contributions to a
multiemployer plan under the terms of the plan or under the terms
of a collectively bargained agreement shall, to the extent not
inconsistent with law, make such contributions in accordance with
the terms and conditions of such plan or such agreement.

The Ninth Circuit has read Section 1145 as creating a federal cause of action against employers

who do not make timely contributions as required under a collective bargaining agreement, such

as the one involved in this action. *See, e.g.*, *Trustees of the Screen Actors Guild-Producers*

*Pension & Health Plans v. NYCA, Inc.*, 527 F.3d 771, 774–76 (9th Cir. 2009). Moreover, when

damages are "certain," as in this case where covered work has been performed and the only

question is the amount of contribution due, the burden is on the *employer* to prove that the

plaintiff's damage estimate is incorrect. *Motion Picture Industry Pension & Health Plans v. N.T.*

*Audio Visual Supply, Inc.*, 259 F.3d 1063, 1065–66 (9th Cir. 2001). In other words, the

determination regarding the amount due is to be construed in favor of *the trust funds*.

As explained, contributions that defendant owed under Section 1145 are delinquent. 29

U.S.C. 1132(g)(2) sets forth the damages that are to be recovered by the plan in such an action (as

stated, plaintiff trust funds qualify as a multi-employer employee benefit plan under Section

1132):

4

In any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 [29 USCS § 1145] in which a judgment in favor of the plan is awarded, the court shall award the plan—

    (A)    the unpaid contributions,

    (B)    interest on the unpaid contributions,

    (C)    an amount equal to the greater of—

        (i)    interest on the unpaid contributions, or

        (ii)    liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

    (D)    reasonable attorney's fees and costs of the action, to be paid by the defendant, and

    (E)    such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of the Internal Revenue Code of 1986 [26 USCS § 6621].

The Ninth Circuit has interpreted Section 1132(g)(2) to mean that, when an employer is found liable for delinquent contributions, an award of the unpaid contributions, interest, liquidated damages, and reasonable attorney's fees and costs is *mandatory*. *See Northwest Administrators, Inc., v. Albertsons, Inc.*, 104 F.3d 253, 257–58 (9th Cir. 1996); *Teamsters Pension Trust Fund-Board of Trustees of the Western Conference v. Allyn Transportation Co.*, 832 F.2d 502, 507 (9th Cir. 1987).

In short, plaintiffs' complaint sufficiently states a meritorious cause of action for breach of fiduciary duty under ERISA.

## B.    Remainder of the *Eitel* Factors.

The remainder of the *Eitel* factors favor entering default judgment in favor of plaintiffs. If this motion is not granted, plaintiffs will be left without a remedy or a means to prevent defendant's continued delinquency. Defendant never answered or otherwise responded to the

1    complaint, so it is unclear whether there would be any dispute over material facts. There is no

2    evidence that defendant's failure to respond was the result of excusable neglect.

3        Also, it is true that a large sum of money at stake would disfavor default judgment.

4    *See Eitel*, 782 F.2d at 1472 (stating that a three million dollar judgment at stake, considered in

5    light of the parties' dispute as to material facts, supported the court's decision not to enter

6    default judgment). At present, plaintiffs seek a determined amount of about $30,000, in addition

7    to an injunction compelling defendant to submit to an audit and an accounting with plaintiff. But

8    the final amount of damages to be determined following the audit is unclear. Indeed, it is quite

9    possible that the amount of contributions owed could fluctuate widely year-to-year. Nevertheless,

10   at present plaintiff has requested only approximately $30,000, which is not unreasonable. The

11   Court can evaluate the reasonableness of the total amount requested once the audit has been

12   completed, as explained below. The undetermined amount of total damages does not disfavor

13   granting default judgment — but it may result in a reduction of the damages requested in the

14   event that the new request following the audit is unreasonably high.

15       Finally, although federal policy does favor a decision on the merits, Rule 55(b) allows

16   entry of default judgment in situations such as this, where the defendant has refused to litigate.

17   On balance, the *Eitel* factors weigh in favor of granting default judgment.

18                    **C.    Determination of Relief.**

19       Plaintiffs seek a judgment granting the following relief: (1) $13,662.27 in unpaid

20   contributions; (2) $7,555.51 in liquidated damages and interest; (3) $10,318.75 in attorney's fees

21   and $795.75 in costs; (4) an injunction ordering defendant to submit to an audit; and (5) an order

22   compelling defendant to meet with plaintiffs for an accounting and allowing plaintiffs to amend

23   the final judgment following that accounting to include the amounts of contributions determined

24   from the audit, plus liquidated damages and interest on those amounts.

25                    *(1)    Unpaid contributions for 2006.*

26       As stated, the Ninth Circuit has held that when an employer is found liable for delinquent

27   contributions, an award of the unpaid contributions, interest, liquidated damages, and reasonable

28   attorney's fees and costs is *mandatory*, pursuant to 29 U.S.C. 1132(g)(2). *Northwest*

1    *Administrators*, 104 F.3d at 257–58; *Teamsters Pension Trust Fund*, 832 F.2d at 507. Based on

2    the results of the audit performed for the year of 2006, plaintiffs determined the amount owed in

3    unpaid contributions for 2006 was $13,662.27. Therefore, plaintiffs' request for $13,662.27 in

4    unpaid contributions for the year of 2006 is hereby **GRANTED**.

5            *(2)*      ***Liquidated damages and interest for 2006.***

6        Section 1132(g)(2) is clear as to the recoverable liquidated damages and interest amounts

7    in an action such as this. *First*, the liquidated damages amount may not exceed 20 percent "(or

8    such higher percentage as may be permitted under Federal or State law)" of the unpaid

9    contributions amount. § 1132(g)(2)(C)(ii). *Second*, interest on unpaid contributions must be

10    calculated "by using the rate provided under the plan, or, if none, the rate prescribed under section

11    6621 of the Internal Revenue Code of 1986 [26 USCS § 6621]." § 1132(g)(2).

12        Plaintiffs generally seek an award of "liquidated damages *and* interest in the amount of

13    $7,555.51" (Br. 2, 4 (emphasis added)). But plaintiffs neither specify what portion of this amount

14    is for liquidated damages verses interest, nor how the interest rate was calculated — whether

15    under the plan or some other formula. As a result, this order cannot tell whether the requirements

16    of Section 1132(g)(2) were complied with and cannot award the requested damages at this time.

17        Therefore, plaintiffs' request for liquidated damages and interest in the amount of

18    $7,555.51 is hereby **DENIED**. Plaintiffs may submit a proper explanation of the requested

19    amounts of liquidated damages and interest (on the unpaid contributions for 2006 only) in

20    accordance with Section 1132(g)(2) by **NOON ON FRIDAY, JANUARY 15, 2010**. Following such a

21    submission, the Court will then determine whether the requested relief is appropriate.

22            *(3)*      ***Attorney's fees and costs.***

23        Plaintiffs seek $10,318.75 in attorney's fees and $795.75 in costs. Defendant has failed to

24    appear in this case, and the requested amounts appear reasonable. Moreover, plaintiff has

25    submitted a separate document detailing the costs and fees incurred thus far in this action and why

26    such amounts are reasonable (Dkt. No. 26). Therefore, plaintiffs' request for $10,318.75 in

27    attorney's fees and $795.75 in costs is hereby **GRANTED**.

28

***(4)*** ***Injunction.***

Plaintiffs seek an injunction (Br. 4–5):

> [C]ompelling defendant to submit to an audit by auditors selected by plaintiff trust funds covering the time period from January 1, 2007, to the present date, at defendant's residence or the location where the records are kept, at a reasonable time or times during business hours, and to allow such auditors to examine and copy defendant's records, papers, and/or reports relevant to enforcement of the agreement, including but not limited to:
>
> > Individual earning records (compensation); W–2 forms; 1096 and 1099 forms; reporting forms for all Trust Funds; State DE–3 tax reports; workers compensation insurance report; employee time cards; payroll journal; quarterly payroll tax returns (form 941); check register and supporting cash voucher; Former 1120– 1040 or partnership tax returns; general ledger — (portion relating to payroll audit).

Section 8(G)(1) of the Cement Masons Master Agreement 2005–2009, a portion of the trust agreement at issue here, states as follows (Dkt. No. 27 Exh. C (emphasis added)):

> The Employer and the Individual Employer agree that upon a written request from the Union or the Employer to the Board of Directors of the Northern California Cement Masons' Funds Administration, Inc., the Board of Directors will direct an audit of *the payroll account* of any Individual Employer named in the request within ten (10) days. *If the initial audit on the payroll account does not provide enough information to determine whether or not any delinquency exists, then the Board of Directors will direct a further audit of whatever records or accounts exist in order to determine the amount of delinquency.*

Under the plain terms of this trust agreement, plaintiffs have the right to audit defendant's *payroll account*. *If* the audit of the payroll account is insufficient to determine whether any delinquency exists, *then* plaintiffs may audit any other records or accounts that exist in order to determine the amount of delinquency. The Ninth Circuit has held that when the trust agreement terms allow for such an audit, the court may compel the audit specified in the trust agreement terms. *Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.*, 920 F.2d 1491, 1494 (9th Cir. 1990).[1] But in this case, plaintiffs seek to audit *more* materials than are allowed in the trust agreement, at least during the first stage of simply determining whether there has been a

---

[1] Even were there no case law on the matter, Section 1132(g)(2)(E) gives this order discretion to award "such other legal or equitable relief as the court deems appropriate."

delinquency. As stated, plaintiffs may only audit additional materials if a simple audit of defendant's payroll account proves insufficient to determine whether a delinquency exists (Dkt. No. 27 Exh. C at § 8(G)(1)).

Therefore, plaintiffs' request for an injunction is **GRANTED** as follows (in accordance with the trust agreement terms):

> Defendant RBS must immediately submit to an audit by auditors selected by plaintiff trust funds covering the time period from January 1, 2007, to the present date, at defendant's residence or the location where the records are kept, at a reasonable time or times during business hours, and to allow such auditors to examine and copy defendant's payroll accounts only. Pursuant to Section 8(G)(1) of the Cement Masons Master Agreement 2005–2009, if the initial audit on the payroll account does not provide enough information to determine whether or not any delinquency exists, then defendant must submit to a further audit, at the direction of the Board of Directors, of whatever records or accounts exist in order to determine the amount of delinquency.

### (5)    *Request for an accounting between plaintiffs and defendant, and plaintiffs' request to amend the judgment.*

Plaintiffs request an that an accounting be had between plaintiffs and defendant. Precisely what such "an accounting" would entail or add to the audit is not explained. Rather, only a half-sentence in plaintiff's motion requests: "(5) that an accounting be had between Plaintiffs and Defendant" (Br. 5). Then, upon completion of the "accounting," plaintiffs request the ability to *amend* the judgment entered by this order to incorporate the outstanding sums ascertained from the audit to be due from defendant, as well as liquidated damages and interest on said sums. Both requests are hereby **DENIED**. Plaintiffs have cited neither statute, case law, nor explanation as to why an accounting would be necessary in addition to the audit, or why they should be granted the discretion to *unilaterally amend* an order of this Court.

Instead, upon completion of the audit, plaintiffs may file another submission detailing the additional damages (apart from the amount granted in this order), if any, that plaintiffs have

deemed appropriate to be assessed against defendant for the years of 2007 to the present. The Court will then determine if the requested relief is appropriate.

**CONCLUSION**

For the above reasons, plaintiffs' motion for default judgment is hereby **GRANTED**. Defendant RBS is hereby **ORDERED** to immediately submit to an audit by auditors selected by plaintiff trust funds covering the time period from January 1, 2007, to the present date, at defendant's residence or the location where the records are kept, at a reasonable time or times during business hours, and to allow such auditors to examine and copy defendant's payroll accounts only. Pursuant to Section 8(G)(1) of the Cement Masons Master Agreement 2005–2009, if the initial audit on the payroll account does not provide enough information to determine whether or not any delinquency exists, then defendant must submit to a further audit, at the direction of the Board of Directors, of whatever records or accounts exist in order to determine the amount of delinquency.

Defendant is also hereby **ORDERED** to pay plaintiffs $13,662.27 in unpaid contributions (related to defendant's failure to comply with the agreement in 2006 only), $10,318.75 in attorney's fees, and $795.75 in costs.

Plaintiffs' request for liquidated damages and interest in the amount of $7,555.51 is hereby **DENIED**. Plaintiffs may submit a proper explanation of the requested amounts of liquidated damages and interest (on the unpaid contributions for 2006 only) in accordance with Section 1132(g)(2) by no later than **NOON ON FRIDAY, JANUARY 15, 2010**. Following such a submission, the Court will then determine whether such relief is appropriate.

Finally, plaintiffs' request for an accounting and to amend the judgment following the completion of such an accounting is hereby **DENIED**. Instead, upon completion of the *audit*, plaintiffs may file a submission detailing the damages (apart from the amount granted in this order), if any, that plaintiffs have deemed appropriate to be assessed against defendant for the

years of 2007 to the present.  The Court will then determine whether the requested relief is

appropriate.

     **IT IS SO ORDERED.**

Dated: January 8, 2010.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE